## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
## SOUTHERN DIVISION

**CITY OF BILOXI, MISSISSIPPI**                                **PLAINTIFF**

**V.**                                          **CASE NO.: 1:19-CV-363-LG-RHW**

**FEDERAL EMERGENCY**
**MANAGEMENT AGENCY and**
**PETER T. GAYNOR, in his official capacity.**             **DEFENDANTS**

### FIRST AMENDED COMPLAINT

Plaintiff, City of Biloxi, Mississippi ("Biloxi") files this its First Amended Complaint against Defendants, Federal Emergency Management Agency ("FEMA") and Peter T. Gaynor, Administrator of the Federal Emergency Management Agency (collectively "FEMA"), and states:

1. This is an action for administrative review, declaratory relief, and damages arising from FEMA's failure to comply with the Robert T. Stafford Disaster Relief and Emergency Assistance Act, 42 U.S.C. §§ 5121, et seq. ("Stafford Act"), and the Administrative Procedure Act, 5 U.S.C. §§ 701-706, in connection with the disbursement of disaster assistance funds to Biloxi to repair approximately 170 miles of the City's potable water, sanitary sewer collection and storm drainage system which were damaged by Hurricane Katrina in 2005.

2. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331.

3. By affirmatively appearing before this Court to seek relief against an agency of the United States, Biloxi is not consenting to jurisdiction over any issue otherwise barred by the Eleventh Amendment and reserves all Constitutional protections that Amendment provides.

4. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391. An agency of the United States is a defendant and Biloxi resides in this judicial district. Further, a substantial portion of events giving rise to the subject cause occurred in the Southern District of Mississippi.

**Parties**

5. Biloxi is a municipal entity and political subdivision of the State of Mississippi, operating within Harrison County, Mississippi, Second Judicial District, which may be served with process by and through its Municipal Clerk, Stacy Thacker, at 140 Lameuse Street, Biloxi, MS 39530.

6. FEMA was created in 1979 as the result of the merger of several pre-existing federal agencies that handled disaster related responsibilities. FEMA is the federal agency designated to administer the provisions of the Stafford Act.

7. Peter T. Gaynor is the Administrator of FEMA. In that capacity, Administrator Gaynor is responsible for the overall administration of FEMA. Administrator Gaynor is sued in his official capacity.

**Statement of Facts**

8. In order to fulfill its obligation to provide potable water, sanitary sewer and storm drainage throughout the City of Biloxi, Biloxi operates and maintains 170 miles of potable water supply and distribution system, sanitary sewer system and storm drainage system.

9. On August 29, 2005, Hurricane Katrina, a Category 4 hurricane, made landfall in Biloxi, Mississippi creating a twenty-two foot storm surge and major flooding to the majority of the peninsula on which Biloxi is located. The unprecedented storm surge caused by Hurricane Katrina caused complete devastation to Biloxi's sanitary sewer system, potable water system and storm drainage system. The 170 miles of water, sewer and drainage system devastation were separated out in fourteen areas of destruction.

10. In the case of Hurricane Katrina, President George W. Bush declared that a major disaster existed and initiated the federal government's involvement in the hurricane recovery effort pursuant to the Stafford Act. 70 FR 67188 (Nov. 4, 2005). The Stafford Act generally provides assistance essential to meeting immediate threats to life and property resulting from a major disaster,

as well as for hazard mitigation measures that substantially reduce the risk of future damage. 42 U.S.C. §§ 5170b and 5170c.

11.     The Stafford Act specifically authorizes FEMA to fund repairs to public facilities damaged by a major disaster. 42 U.S.C. § 5172(a). Public facilities include any publicly owned flood control, navigation, irrigation, reclamation, public power, sewage treatment and collection, water supply and distribution, watershed development, or airport facility. 42 U.S.C. § 5122.

12.     In accordance with the foregoing, Biloxi sought and obtained disaster assistance from FEMA. Following Hurricane Katrina, Biloxi undertook damage assessments, obtained repair cost estimates, and submitted them to FEMA for approval and obligation of funding. FEMA reviewed each repair project and required services for its eligibility for assistance and the reasonableness of the estimated repair costs.

13.     After FEMA's review, FEMA designated fourteen project areas within the City of Biloxi as requiring restoration efforts as it relates to the water, sewer and drainage system devastation. An initial sixteen Project Worksheets ("PW") were created by FEMA and funding obligated by FEMA as it relates to these Biloxi infrastructure restoration efforts. The sixteen PWs included the repair scopes of work for the 14 project areas and two PWs for repairs to sewer pump stations and surveys & geotechnical services during the pre-design phase.

14.     For the sixteen PWs that FEMA approved, it obligated funds and transferred them to a bank account to which the State of Mississippi, Division of Emergency Management ("MEMA") has access.[1] As the repairs progressed, Biloxi paid invoices for work and services as described and approved in the FEMA PWs. Thereupon Biloxi submitted proof of payment and invoices to MEMA, which then withdrew funds from the account and reimbursed Biloxi after MEMA's verification that

---

[1] The process known as obligating occurs when FEMA decides to fund a repair project and places funds into the State account established for the disaster. The process known as "de-obligating" occurs when FEMA reverses its decision to fund disaster assistance and takes back money it previously provided.

the work had been successfully completed in accordance with the FEMA PWs. FEMA, MEMA, and Biloxi followed this process for the sixteen PWs with the funds obligated by FEMA between January 2008 and June 2008. FEMA obligated an initial estimate of $344 million (+) in disaster aid relating to Hurricane Katrina and Biloxi's infrastructure repair projects. It was anticipated that the Biloxi infrastructure repairs would be significant and complex. In October 2010, FEMA consolidated the funding and services into a new distinct project worksheet PW 11235. This October 2010 Project Worksheet Report 11235 - Version 0, provided for costs assuming a completion date of February 28, 2013. Ultimately, FEMA developed, negotiated and approved a total obligation of $21,725,276.64[2] in funding specifically for Project Management ("PM") and Resident Project Representative ("RPR") inspection special services. PM and RPR special services are enumerated as separate and distinct line items of services and funding in all FEMA approved project worksheets that comprise the $21.7M obligated.[3] (*See* Exhibit "A" – Project Worksheet Report 11235 – Version 2 (14 pages)(page 9 of 14)).

15.    In August, 2015, the Department of Homeland Security's Office of Inspector General ("OIG") issued an audit (OIG Audit #OIG-15-131-D) with a recommendation to FEMA to disallow as ineligible $8,093,971.00 of the $21,725,276.64 originally approved and obligated by FEMA in funding of PM and RPR special services as defined in PW 11235. The OIG audit recommended that only four percent (4%) of the entire construction cost as a "reasonable fee" for PM and RPR services.

16.    By letter dated May 15, 2018, FEMA informed Biloxi and MEMA that FEMA would de-obligate $8,820,189.64 for PM and RPR services; those funds though having already been expended by previous reimbursements to Biloxi from the State (MEMA) for PM and RPR services

---

[2] See Exhibit "A" – Project Worksheet Report 11235 – Version 2 (14 pages), pages 5 and 8 ($20,725,726.64 plus an additional $1,000,000.00 for PVC issues).

[3] FEMA reimbursed Biloxi $4.1M for PM and RPR special services from October 7, 2008 to March 26, 2010 from the initial 16 PWs. A separate PW 11235 for PM and RPR special services was created by FEMA and an additional $17.6M in funding was obligated for PM and RPR services through the estimated performance period of February 28, 2013. The total of the $4.1M and the $17.6M yields the $21.7M that FEMA ultimately approved.

in accordance with the FEMA authorized Project Worksheets. These PM and RPR services are imperative for completing the infrastructure repairs needed after Hurricane Katrina; for which, FEMA drafted, approved, and obligated funding in seventeen (17) PWs.[4]

17.   As a result of OIG audit # OIG-15-131-D, FEMA elected to de-obligate $8,820,189.64 in funds for PM and RPR services because the cost exceeds four percent (4%) of construction costs.  Biloxi appealed this decision twice.  By letter dated December 20, 2019, upon the submission by the City of additional information in support of its second administrative appeal, FEMA reinstated $8,820,189.64 that FEMA had previously de-obligated. (*See* Exhibit "B" – FEMA letter from Tod Wells and Second Appeal Analysis.)  Therefore this portion of the City's claim is no longer in dispute.

18.   During the infrastructure repairs multiple timeline extensions for performance have been granted by FEMA. When the Project Worksheet Report – Version 0 was prepared in October 2010, costs were estimated through February 28, 2013.  At this time, the approved timeline for performance and completion of the Biloxi infrastructure projects extends through December 2024. Accordingly, Biloxi requested an additional $6,678,918.00 in funding for PM and RPR services in April 2016. Although FEMA acknowledged the fact that the project was so complex as to extend the timeline for performance approximately 10 years beyond what was originally estimated, FEMA refuses to fund additional PM and RPR services which are crucial for completion of said project. FEMA refuses to provide additional funding requested by the City in the amount of $6,678,918.00 to cover the cost of PM and RPR services through the completion of the project.  Such action is a direct violation of the Stafford Act (42 U.S.C. § 5205(c)).

---

[4] The initial sixteen PWs for project areas, pump stations, and geotechnical & surveys during design phase; and PW 11235 for PM and RPR services

19. On p. 4 of 4 of the Second Appeal Analysis by FEMA, attached as part of FEMA's letter on the Second Appeal (Exhibit "B"), FEMA indicated Biloxi did not provide "documentation showing that eligible repair or replacement costs exceed the original estimate and are not associated with the improved project." However, Biloxi did submit this information in voluminous detail and on a jumpdrive as part of its Second Appeal.

## COUNT I
Agency Action Contrary to Law:
Violation of 42 U.S.C. § 5205(c)

20. Biloxi incorporates by reference the allegations set forth in paragraphs 1 through 19.

21. Section 705(c) of the Stafford Act provides:

(c) Binding Nature of Grant Requirements – A State or local government *shall not* be liable for reimbursement or any other penalty for any payment made under this Act if-

  (1) the payment was authorized by an approved agreement specifying the costs;

  (2) the costs were reasonable; and

  (3) the purpose of the grant was accomplished.

42 U.S.C. § 5205(c) (emphasis added).

22. Biloxi is a state or local government within the meaning of Section 705(c).

23. The Project Management and RPR services to oversee the infrastructure repair work was authorized by an approved agreement specifying the *estimated costs* (emphasis added); those costs were reasonable; and the purpose of the grant was and is currently being accomplished.

24. Pursuant to the Administrative Procedure Act, 5 U.S.C. § 701, et seq., "a person suffering legal wrong because of agency action or adversely affected or aggrieved by agency action within the meaning of a relevant statute is entitled to judicial review thereof." 5 U.S.C. § 702.

25. The decision by FEMA not to provide additional funding in the amount of $6,678,918.00 is a "final agency action," adversely affecting Biloxi, and is reviewable in this Court pursuant to the judicial review provisions of the Administrative Procedure Act, 5 U.S.C. §§ 701-706.

26. Under 5 U.S.C. § 706, a reviewing court shall "hold unlawful and set aside agency action, findings, and conclusions" found to be "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law," or "in excess of statutory jurisdiction, authority, or limitations, or short of statutory right," or "without observance of procedure required by law." 5 U.S.C. § 706(2).

27. Beginning on p. 3 of 4 of the Second Appeal Analysis attached as part of FEMA's letter on the Second Appeal (Exhibit "B"), FEMA admits in the last paragraph the *estimated* (emphasis added) PM fee is *generally limited* (emphasis added) to 3% of construction costs and final payment will be based on reasonable actual costs[5]. Furthermore FEMA acknowledges FEMA's CEF Guide[6] provides an additional PM allowance of 1% of construction costs for the design phase fee. Additionally, FEMA concedes "…special services may be required for some projects. Such services include [but not limited to] engineering surveys, soil investigations, services of a resident engineer, and feasibility studies. Because special services are not required on all projects, they are not included in the estimated PM percentages." Here, FEMA admits PM fees are *estimated* and are *generally limited* to 4% of construction costs; and, special services may be required for some projects and are not included in the estimated PM percentages.[7,8]

28. On p. 4 of 4 of the Second Appeal Analysis attached as part of FEMA's letter on the Second Appeal (Exhibit "B"), FEMA "…decided instead to allow reasonable PM costs limited to 4 percent of total construction costs. Furthermore, the RA [FEMA Regional Administrator] determined that because the Applicant [City of Biloxi] did not separately document the RPR costs, FEMA could not verify that the additional requested costs constituted 'special services.' Therefore, the RA

---

[5] Response and Recovery Policy RRP 9525.6, *Project Supervision & Management Costs of Subgrantees,* at 2 (Apr. 22, 2001).
[6] *CEF for Large Projects Instructional Guide V2.1*, at 11-1 (Sept. 2009). [hereinafter *CEF Guide*]
[7] *CEF Guide*, at 11-1, 11-2, 11-3
[8] *Public Assistance Guide*, FEMA 322, at 79 (Oct. 1999) [hereinafter *PA Guide*]

included the RPR costs in the 4 percent estimated PM calculation. On second appeal, FEMA finds that the RPR do not include eligible special services[9], and instead cover activities that are subject to the 4 percent PM allowance." Here, the City avers and incorporates by reference its previous responses to FEMA's determination to deny additional funding of $6,678,918.00 for PM and RPR services as if full set forth herein, including but not limited to the City's July 3, 2019 Second (2nd) Appeal with Exhibits, of FEMA's denial of an additional $6,678,918.00. The City provided FEMA detailed spreadsheets and invoices separating the PM and RPR services and costs. Additionally, FEMA's denial that the RPR services are not eligible special services and instead cover activities that are subject to the 4% PM allowance is not factually correct in accordance with FEMA's *CEF Guide*; *PA Guide*; Response and Recovery Policy RRP 9525.6; and Exhibit "A" – Project Worksheet Report 11235 – Version 2.

29.   The decision by FEMA not to provide additional funding in the amount of $6,678,918.00 to Biloxi for the additional PM and RPR services needed to complete the project through performance completion date of December 2024 is arbitrary, capricious, not in accordance with the law, in excess of its statutory authority under the Stafford Act, and is an anticipatory breach of contract. FEMA has, rightly so, extended the performance period for completion of the $344M+ infrastructure repair program. The City is required to complete all the work of the Federal award[10] and the State (MEMA) must certify that all incurred costs for the approved work was completed by the City in accordance with FEMA regulations and policies[11]. FEMA detailed and enumerated the types of services and funding for both PM and RPR in PW 11235, and, FEMA stated the necessity of these services in PW 11235 for this complex infrastructure repair program. FEMA's own *CEF Guide*, *PA Guide,* and the Response and Recovery Policy RPR 9525.6 acknowledges such additional and

---

[9] *PA Guide*, at 79
[10] 2 CFR § 200.343
[11] 44 CFR § 206.205(b)(1)

special services may be required on complex projects; and, these PM and RPR services constitute additional and separate funding. For FEMA to require the City to complete the infrastructure repair work without additional funding for the services FEMA previously approved is an agency action that makes it impossible for a party (the City) to hold up our contractual obligations to FEMA and the State.

## COUNT II
Agency Action Contrary to Law
Bad Faith Breach of Contract

30. Biloxi incorporates by reference all allegations set forth in paragraphs 1 through 29.

31. When the United States or its agencies enter into contract relations, "its rights and duties therein are governed generally by the law applicable to contracts between private individuals." *Franconia Associates v. U.S.*, 536 U.S. at 141 (citing *Mobil Oil Exploration,* 530 U.S. at 607). Mississippi law imposes a duty of good faith and fair dealing in the execution of all contracts. The breach of good faith is bad faith characterized by "some conduct which violates standards of decency, fairness and reasonableness." *Johnston v. Palmer*, 963 So.2d 586, 594 (Miss. Ct. App. 2007) (citing *Cenac v. Murray*, 609 So.2d 1257, 1272 (Miss. 1992)). "'Bad faith' is not simply bad judgment or negligence, rather it implies the conscious doing of wrong because of dishonest purpose or moral obliquity." *Id*. (citing *Bailey v. Bailey*, 724 So.2d 335, 338 (Miss. 1998)).

32. FEMA, MEMA and Biloxi worked together to create PW 11235 and determined that $21M estimated for PM and RPR services was reasonable as evidenced by the language of PW 11235 itself and various memoranda sent between the parties. FEMA deemed the estimated $21M in funds obligated as reasonable and necessary to complete the complex Biloxi infrastructure project by February 28, 2013.

33. FEMA breached its duty to execute its contract extension on timeline of performance with Biloxi in good faith by acting in ways which violate standards of decency, fairness and reasonableness. By extending the timeline to complete the Biloxi infrastructure project through December 2024 (approximately 10 years beyond the date originally estimated), FEMA has admitted and acknowledged the complexity of the project. Biloxi reasonably believed that because the project completion date was extended to 2024 by FEMA, FEMA would also obligate the funding necessary to complete such project, including PM and RPR services. Biloxi has relied on its detriment on the fact that FEMA extended the project timeline until 2024. Along with costs of construction, Biloxi has incurred costs for PM and RPR services. FEMA expects Biloxi to complete the project, yet FEMA is unwilling to fund the services which would reasonably flow from the original authorization and the new extended project timeline. It is unfair, unreasonable and against moral obliquity to require Biloxi to complete the project and extend the deadline for completion, but not fulfill its end of the bargain by providing additional funding for services which are crucial to completion.

34. Further, FEMA's decision not to provide $6.6M in additional funding for PM and RPR services after approving a timeline of performance extension through December 2024 constitutes bad faith.

**PRAYER FOR RELIEF**

WHEREFORE, Biloxi requests entry of final judgment:

(1) Directing FEMA to obligate an additional $6,678,918.00 in funding for PM and RPR services to cover the cost of services required through the completion date of December 2024;

(2) Awarding Biloxi any other relief sought in its Amended Complaint; and

(3) Awarding Biloxi such other relief as may be just, proper and equitable.

RESPECTFULLY SUBMITTED, this the 29th day of January, 2020.

        **CITY OF BILOXI, MISSISSIPPI**

BY:   */s/ Peter C. Abide*
      PETER C. ABIDE (MSB # 1026)
      **CURRIE JOHNSON & MYERS, P.A.**
      Attorneys for City of Biloxi, Mississippi
      925 Tommy Munro Drive, Suite H
      Biloxi, Mississippi 39532
      (228) 385-1010 Telephone
      (228) 385-1011 Facsimile
      pabide@curriejohnson.com


BY:   */s/ Gerald Blessey*
      GERALD BLESSEY (MSB # 3591)
      **GERALD BLESSEY LAW FIRM**
      Attorney for City of Biloxi, Mississippi
      2577 Chatham Court
      Biloxi, Mississippi 39531
      blesseylaw@me.com

## CERTIFICATE OF SERVICE

  I, Peter C. Abide , hereby certify that on the below referenced date, I electronically filed the foregoing document with the Clerk of the Court using the MEC system for provision of notification which sent a copy of same to all counsel of record.

  THIS the 29th day of January, 2020.

                */s/ Peter C. Abide*
                PETER C. ABIDE, ESQUIRE

**PETER C. ABIDE**
Mississippi Bar Number 1026
**CURRIE JOHNSON & MYERS, P.A.**
925 Tommy Munro Drive, Suite H
Biloxi, Mississippi  39532
(228) 385-1010
(228) 385-1011 fax
pabide@curriejohnson.com