

U.S. Department of Homeland Security
500 C Street, SW
Washington, DC 20472

DEC 20 2019

Gregory S. Michel
Executive Director
Mississippi Emergency Management Agency
Post Office Box 5644
1 MEMA Drive
Pearl, MS 39288-5644

Re: Second Appeal – City of Biloxi, PA ID 047-06220-00, FEMA-1604-DR-MS,
    Project Worksheet (PW) 11235 – Improved Project – Project Management Costs

Dear Mr. Michel:

This is in response to a letter from your office dated August 27, 2019, which transmitted the referenced second appeal on behalf of City of Biloxi (Applicant). The Applicant is appealing the U.S. Department of Homeland Security's Federal Emergency Management Agency's (FEMA) decision to to deobligate $8,820,189.64 in previously awarded PM costs and to deny additional project management (PM) costs of $6,678,918.00.

As explained in the enclosed analysis, FEMA has determined that certain soft costs were omitted from the original project estimate and that $8,820,189.64 will be reinstated. Regarding the disallowed additional PM funding requested, the Applicant has not provided documentation justifying an additional $6.7 million in PM funding. Accordingly, I am partially granting this appeal.

Please inform the Applicant of my decision. This determination is the final decision on this matter pursuant to 44 C.F.R. § 206.206, **Appeals**.

                                      Sincerely,

                                      Tod Wells
                                      Acting Director
                                      Public Assistance Division

Enclosure

cc: Gracia Szczech
    Regional Administrator
    FEMA Region IV

EXHIBIT "B"

www.fema.gov

# SECOND APPEAL ANALYSIS
# FEMA-1604-DR-MS
## City of Biloxi, PA ID 047-06220-00
## Project Worksheet 11235 – Improved Project – Project Management Costs

**Background**

During the incident period of August 29 to October 14, 2005, Hurricane Katrina caused extensive damage throughout the City of Biloxi (Applicant), Mississippi. FEMA prepared 17 Project Worksheets (PW) for work related to the Applicant's potable water distribution, sanitary sewer collection and lines, and sanitary sewer lift station. It later consolidated 16 of the PWs into a single improved project, PW 11253, which included approximately $4.1 million in Project Management (PM) costs. Additional PM costs were captured in PW 11235.[1] In three versions of PW 11235, FEMA obligated approximately $17.6 million for the Applicant's PM contract costs and converted this PW into an improved project.[2]

In August 2015, a Department of Homeland Security Office of Inspector General (OIG) audit[3] found that the Applicant improperly procured its PM contract, for total costs of more than $21 million. The OIG recommended FEMA disallow all contract costs as an enforcement remedy for the procurement violation, including at least $8 million in costs that it found unreasonable. On December 16, 2015, the Applicant requested an additional $6,678,918.00 for PM costs on PW 11235, explaining that various circumstances extended the larger infrastructure project's timeframe and expanded the scope of the underlying construction work. In February 2016, FEMA denied the request, citing the recently completed OIG audit. FEMA agreed to limit costs to reasonable amounts and, in a March 26, 2018 memorandum[4] stated that it used the FEMA CEF guidance to determine reasonable PM costs to be $12,802,888.00, including $3,200,722.00 for PM design phase (1 percent of construction cost) and $9,602,166.00 for PM construction phase (3 percent of construction costs). FEMA deobligated the remaining $8,820,189.64. FEMA advised the Grantee and Applicant of the deobligation by letter dated May 15, 2018.

*First Appeal*

The Applicant timely appealed both the February, 2016 denial of the additional $6.7 million in PM funding and the May, 2018 deobligation of the previously awarded $8.8 million. Regarding the $6.7 million in additional PM funding, the Applicant noted that the CEF PM percentages are intended only as estimating guides, and that actual costs incurred for the PM were essential and reasonable given the immense scope of the infrastructure project captured in PW 11253. The Applicant acknowledged that while improved projects are not typically adjusted, FEMA has the authority to make funding changes when warranted by circumstances, as confirmed by Disaster Specific Guidance #23, *Improved and Permanent Relocation Projects*.[5] The Applicant argued its

---

[1] PW 11235 included PM costs related to earthwork inspections, Resident Project Representative (RPR) services, public relations, and other project management services.
[2] FEMA obligated Version 0 for $16,625,176.62 in October 2010, Version 1 to convert PW 11235 into an improved project in March 2011, and Version 2 to obligate an additional $1 million in May 2011.
[3] U.S. DEP'T OF HOMELAND SEC. OFFICE OF INSPECTOR GEN. (OIG). OIG-15-131-D, FEMA SHOULD RECOVER $21.7 MILLION OF $376 MILLION IN PUBLIC ASSISTANCE GRANT FUNDS AWARDED TO THE CITY OF BILOXI, MISSISSIPPI, FOR HURRICANE KATRINA DAMAGES, at 4 (Aug. 21, 2015).
[4] Letter from Reg'l Adm'r, FEMA Region VI, to Dir. Gulf Coast Reg. Office of Disaster Assistance Oversight (Mar. 26, 2018).
[5] Disaster Specific Guidance #23, *Improved and Permanent Relocation Projects* (Jun. 26, 2007).

request for additional funding was a valid exception to the normal capped procedure, as PM costs and services stretched beyond the initial three-year period and must be continued to successfully complete the project.

Regarding the $8.8 million in deobligated costs, the Applicant stated that PM duties and costs were reasonable as they were developed, negotiated with, and ultimately approved by qualified FEMA personnel. The Applicant noted the $8,093,971.00 that OIG determined unreasonable were for RPR/special services, which the CEF Guide indicates are not normally included in FEMA's estimating guide percentages for PM. The Applicant noted FEMA is not required to use the CEF and initially rejected it as not appropriate for calculating reasonable costs in this PW, so that costs were based on the agreed and estimated manpower hours and hourly rates. Finally, the Applicant argued FEMA is barred from reducing funds on PW 11235 in accordance with section 705(c) of the Robert T. Stafford Disaster Relief and Emergency Assistance (Stafford) Act as all three criteria were met: (1) funds were obligated in an approved agreement; (2) costs were reasonable; and, (3) the purpose of the grant was being accomplished. The Applicant pointed out FEMA approved the PW, the scope of work (SOW), eligible services and associated costs, and obligated funds.

On January 30, 2019, FEMA issued a Request for Information (RFI) asking for documentation separating PM services from RPR/special services by the type of work and cost, and demonstrating that any claimed RPR/special services had not been funded under any other PW associated with the larger infrastructure project, PW 11253. The Applicant responded on March 26, 2019 by referring to PW 11235, and the Grantee responded on March 29, 2019. Neither provided additional documentation.

The FEMA Region IV Regional Administrator (RA) denied the appeal on May 9, 2019. The RA noted that, as an improved project, PW 11235 is limited to estimated costs associated with the eligible SOW, which FEMA calculated using the CEF Guide for PM services. The RA stated as neither the Applicant nor the Grantee responded to the RFI separately documenting the special services, FEMA could not verify that the contract contained special services that should have been estimated as a separate cost from PM, and therefore could not approve the additional funding requested in the Applicant's 2016 first appeal or reinstate deobligated funding beyond the 4 percent PM estimate as requested in its 2018 first appeal. Finally, the RA pointed out that section 705(c) of the Stafford Act does not apply because costs exceeding the 4 percent estimate for PM services are unreasonable.

*Second Appeal*

The Applicant submitted separate second appeals dated July 3, 2019. Regarding the additional PM funding request, it stated FEMA has acknowledged the complexity of the project by way of an approved extension through December 31, 2019, with another extension through December 30, 2024 for the construction project. The Applicant argued it is therefore reasonable to request an additional $6.68 million necessary to manage the project through to completion. The Applicant noted that FEMA had not previously used the CEF to estimate its PM costs.

Regarding the deobligation, the Applicant notes PM and RPR were listed separately under PW 11235 and attaches a spreadsheet of invoices and contractors invoices with services and costs separated. The Applicant also disputes FEMA's assertion that section 705(c) of the Stafford Act does not apply.

The Grantee concurs in letters dated August 27, 2019. The Grantee asserts that it is unreasonable to expect that a standard cost estimating program could reliably indicate total eligible costs for this project. The Grantee cites FEMA policy 9525.6, *Project Supervision and Management Costs of Subgrantees*, which provides that final payment will be based on reasonable actual costs. The Grantee notes the CEF should not be considered conclusive as to reasonableness of costs and emphasizes that FEMA representatives responsible for determining and approving PW 11235 were experienced engineers, construction professionals and Public Assistance (PA) specialists. Regarding the first condition of section 705(c), whether payment was authorized under an approved agreement specifying costs, the Grantee notes that FEMA obligated funding in 2010 and that it has disbursed previously approved funds to the Applicant.

On August 30, 2019, the Grantee forwarded a CEF it prepared, dated June 20, 2019. FEMA Region IV examined the CEF and acknowledged that costs for certain factors had not been included in the Applicant's contract costs. FEMA's Consolidated Resource Center (CRC) determined the Grantee's CEF accurately reflected the complexity of the project and concurred with the additional soft costs identified.

**Discussion**

FEMA caps the amount of PA funding in an improved project based on estimates, including a reasonable amount of soft costs based on the SOW to restore a damaged facility to its pre-disaster design and function.[6] FEMA may amend a PW for additional funding under certain conditions,[7] consistent with the requirement that an improved project is based on estimates. As clarified in subsequent policy, FEMA may increase funding for an improved project if the Applicant identifies an error or omission in the original SOW or cost estimate.[8] If eligible repair or replacement costs exceed the original estimate and costs can be separately documented (i.e., if the costs can be tracked separately from improvement costs), applicants may request that the capped grant be amended.[9]

The estimated PM fee for construction inspection activities is generally limited to 3 percent of construction costs if a contract is used, and final payment will be based on reasonable actual costs.[10] FEMA's CEF Guide, published after the disaster, provides an additional PM allowance at 1 percent of construction costs for the design phase.[11] In addition, special services may be

---

[6] Title 44 Code of Federal Regulations (44 C.F.R.) § 206.203(d)(1) (2004); FEMA Second Appeal Analysis, *Omochumne-Hartnell Water Dist.*, FEMA-1624-DR-CA, at 6-7 (July 14, 2015).
[7] *Public Assistance Guide*, FEMA 322, at 115-16 (Oct. 1999) [hereinafter *PA Guide*].
[8] *Public Assistance Program and Policy Guide*, FP 104-009-2, at 103 (Jan. 2016).
[9] *See generally Public Assistance Guide*, FEMA 322, at 110 (June 2007).
[10] Response and Recovery Policy RRP 9525.6, *Project Supervision & Management Costs of Subgrantees*, at 2 (Apr. 22, 2001).
[11] *CEF for Large Projects Instructional Guide V2.1*, at 11-1 (Sept. 2009).

required for some projects.[12] Such services include engineering surveys, soil investigations, services of a resident engineer, and feasibility studies.[13] Because special services are not required on all projects, they are not included in the estimated PM percentages.[14]

The OIG determined, and FEMA agreed, that the PM contract was improperly procured. While FEMA could have denied all costs as an enforcement remedy,[15] it decided instead to allow reasonable PM costs limited to 4 percent of total construction costs.[16] Furthermore, the RA determined that because the Applicant did not separately document the RPR costs, FEMA could not verify that the additional requested costs constituted "special services." Therefore, the RA included the RPR costs in the 4 percent estimated PM calculation. On second appeal, FEMA finds that the RPR do not include eligible special services,[17] and instead cover activities that are subject to the 4 percent PM allowance.

On second appeal, the Grantee submitted a CEF that included additional soft costs, validated by FEMA's CRC as being accurate. It included estimated soft costs for factors such as general requirements and conditions, construction cost contingencies, cost escalation, overhead and profits, permits, and other cost factors that were inadvertently omitted from FEMA's original estimate. Based on the inclusion of these additional estimated soft costs and the full amount of approved base construction costs, FEMA finds that the originally obligated amounts for estimated PM in PWs 11235 and 11253 were in fact reasonable. Therefore, FEMA will reinstate $8,820,189.64 in PW 11235.

Regarding the disallowed additional PM funding, the Applicant has not identified an error or omission in the original SOW or cost estimate that justifies amending the cap above the previously approved funding. Nor has the Applicant provided documentation showing that eligible repair or replacement costs exceed the original estimate and are not associated with the improved project. Therefore, FEMA will not increase funding for the improved project.

Finally, the issue of whether section 705(c) of the Stafford Act prohibits the appealed actions is now moot, as FEMA is reinstating the deobligated amount.

**Conclusion**

FEMA has determined that certain soft costs were omitted from the original project estimate and that $8,820,189.64 in PM-related expenses are therefore reasonable and will be reinstated. Regarding the additional $6.7 million in PM funding requested, the Applicant has not provided documentation justifying an increase to the PM improved project capped amount. Therefore, FEMA will not increase funding for the improved project. The appeal is partially granted.

---

[12] *PA Guide*, at 79.
[13] *Id.*
[14] *Id.*
[15] 44 C.F.R. § 13.43(a)(2).
[16] Letter from FEMA PA Branch Dir, to Interim Exec. Dir. MEMA and Mayor, City of Biloxi (May 15, 2018).
[17] *See PA Guide*, at 79.