IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI

| | | |
|---|---|---|
| CITY OF BILOXI, MISSISSIPPI | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | Case No.: 1:19-cv-00363-KS-RHW |
| FEDERAL EMERGNCY MANAGMENT | ) | |
| AGENCY (FEMA) and PETER T. GAYNOR, | ) | |
| in his official capacity as acting administrator. [1] | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS
CITY OF BILOXI'S FIRST AMENDED COMPLAINT**

The City of Biloxi's First Amended Complaint[2] arises out of a project funded through the Federal Emergency Management Agency's ("FEMA")[3] Public Assistance disaster grant program ("PA grant program"). The PA grant program provides funds to local governments to restore damage from presidentially declared disasters. Since Hurricane Katrina in 2005, the City has been awarded more than $21 million[4] for the management of a project to restore the City's water, sewer, and storm drainage infrastructure damaged by the storm.

In this lawsuit, the City asserts FEMA should award it an additional $6,678,918.00 in PA grant funding on top of the $21 million already awarded, an additional amount that has never been obligated to the City as part of the disaster relief.

---

[1] On January 14, 2020, Mr. Gaynor was officially confirmed by the U.S. Senate as the FEMA Administrator. *See* https://www.fema.gov/peter-gaynor.
[2] ECF No. 12.
[3] The City also names FEMA Administrator Peter Gaynor in his official capacity as a defendant.
[4] In total, the City has been awarded more than $527 million for dozens of projects for hurricane relief. At issue in this lawsuit is part of the grant-funded project for the management of infrastructure repair of the City's water, sewer and storm drainage system.

The City's claims should be dismissed.  The United States has not waived sovereign immunity for the City's claims.  Moreover, Congress determined that the federal government is not susceptible to suit over its discretionary disaster-relief activities.  Accordingly, there is no jurisdiction for this suit.  FEMA's decision that the City is not eligible for an additional $6,678,918.00 in grant funds is the type of discretionary decision that the Stafford Act was designed to shield.

Finally, the City's breach of contract allegation should be dismissed because the City cannot show the existence of a contract between it and FEMA. Even assuming a contract existed, the Court lacks subject matter jurisdiction over such claims as they are solely within the jurisdiction of the U.S. Court of Federal Claims pursuant to the Tucker Act at 28 U.S.C. § 1491.

Accordingly, the City's First Amended Complaint should be dismissed.

## I.    BACKGROUND

### A.    FEMA's Statutory and Regulatory Framework

FEMA is responsible for, among other things, administering and coordinating the federal governmental response to presidentially declared disasters pursuant to the Stafford Act, 42 U.S.C. §§ 5121 *et seq.*  The Stafford Act disaster assistance is triggered when, at the request of the governor of a state, the president declares an affected area to be a "major disaster."  42 U.S.C. § 5170; 44 C.F.R. §§ 206.36 & 206.38.  Upon such a presidential declaration, FEMA immediately begins assisting states and municipalities in their recovery efforts.  *See* 44 C.F.R. § 206.41(a).

Through the PA grant program, FEMA provides disaster assistance to states and communities to provide emergency assistance, including debris removal, and to fund repairs to eligible facilities. 42 U.S.C. §§ 5170b, 5172 & 5173; *see also* 44 C.F.R. § 206.200 through

206.253.  FEMA assistance often is in the form of grants that support the costs of a state or local government's own recovery efforts. 44 C.F.R. § 206.203.  FEMA works with local representatives to survey damage and estimate the scope and cost of necessary repairs.  44 C.F.R. § 206.202(d).  FEMA then awards grant assistance based on its determination of the amounts needed.

Disaster assistance applicants may appeal FEMA eligibility decisions. 42 U.S.C. § 5189a(a).  The PA grant program affords two levels of appeal. 44 C.F.R. § 206.206(b).  If the party challenging a FEMA determination is a grant subrecipient (such as the City in this case), the party submits an appeal to the grant recipient (such as the Mississippi Emergency Management Agency ("MEMA") in this case). 44 C.F.R. § 206.206(a).  The recipient reviews the appeal and submits it to the appropriate FEMA Regional Administrator,[5] along with its recommendation.  44 C.F.R. § 206.206(c).  The FEMA Regional Administrator decides first appeals, while a FEMA headquarters official, the Assistant Administrator for the Disaster Assistance Directorate, decides second appeals. 44 C.F.R. § 206.206(b).  A second appeal decision is FEMA's final administrative decision. 44 C.F.R. § 206.206(e)(3).

### B.    Hurricane Katrina Relief

On August 29, 2005, Hurricane Katrina struck Biloxi, Mississippi.[6]  In response, President George W. Bush issued a Major Disaster Declaration on the same day, which made FEMA Individual Assistance and Public Assistance available for numerous affected counties, including Harrison County where the City of Biloxi is located.[7]

---

[5] In this case, the regional administrator is FEMA Region IV.
[6] First Amended Compl. ECF No. 12, at ¶ 9.
[7] *Id*. at ¶ 10.

Hurricane Katrina caused extensive damage to 170 miles of the City's "sanitary sewer system, potable water system and storm drainage system."[8]  The City subsequently applied for FEMA PA grant funds to repair its damaged sewer, water, and storm drainage system.[9]  One of those contracts is for the management of the City's infrastructure repair, totaling $21,725,276.64.[10]

As part of FEMA's review process, FEMA, in conjunction with the City, prepared numerous Project Worksheets to document various projects undertaken to repair the damage.[11]  By 2011, approved costs for the management contract that would be reimbursed by FEMA stood at approximately $21.7 million, which included costs invoiced by the City and the remaining estimated costs.[12]

In August 2015, following an audit of the City's awarded grant funds, the Department of Homeland Security, Office of Inspector General ("OIG") recommended that FEMA disallow as ineligible $8,093,971.00 of the $21,725,276.64 that FEMA originally approved and obligated.[13]  As a result of the OIG report, on May 15, 2018, FEMA advised the City and MEMA that it would deobligate $8,820,169.64.

The City appealed FEMA's deobligation determination through FEMA's two-level administrative appeal process.[14]  At the same time, the City filed the instant lawsuit, which was stayed pending the administrative decision.[15]  In both the administrative appeal and its lawsuit,

---

[8] *Id.* at ¶ 9.
[9] *Id*. at ¶ 12.
[10] *Id.* at ¶ 14.
[11] *Id.* at ¶¶ 12-13.
[12] *Id.* at ¶ 14.
[13] *See* OIG-15-131-D, "FEMA Should Recover $21.7 million of $376 Million in Public Assistance Grant Funds Awarded to the City of Biloxi, Mississippi, for Hurricane Katrina Damages" (Aug. 21, 2015), *available at*: https://www.oig.dhs.gov/assets/GrantReports/2015/OIG-15-131-D-Aug15.pdf.  *See also* ECF No. 12 at ¶ 15.
[14] *Id*. at ¶ 17.
[15] *See* Order Granting Stay, ECF No. 7.

the City further alleged it should be awarded an additional amount of $6,678,918 in PA grant funds, funds that were neither part of the OIG audit nor were they ever awarded or obligated to the City.

On December 20, 2019, after reconsideration, FEMA reinstated the previously deobligated amount of $8,820,169.64 but denied the City's request for additional funds.[16]

Following the administrative decision, the City amended its complaint in this case to drop the claim about the deobligated funds and to assert only a claim for an additional $6,678,918 in PA grant funds.

## II.    ARGUMENT

Under Rule 12(b)(1) of the Federal Rules of Civil Procedure, a court must dismiss a cause "for lack of subject matter jurisdiction when it lacks the statutory or constitutional power to adjudicate the case." *Home Builders Ass'n of Miss. v. City of Madison, Miss.*, 143 F.3d 1006, 1010 (5th Cir. 1998) (quoting *Nowak v. Ironworkers Local 6 Pension Fund*, 81 F.3d 1182, 1187 (2d Cir. 1996)).  In considering such a motion, the court must limit its inquiry to facts stated in the complaint and the documents either attached to or incorporated in the complaint. *Lovelace v. Software Spectrum, Inc.*, 78 F.3d 1015, 1017 (5th Cir. 1996).

Similarly, to survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)) (quotation marks omitted).  "[C]onclusory allegations or legal conclusions

---

[16] *Id*. at ¶ 17.  In denying the request for additional money, FEMA explained the City did not provide "documentation showing that eligible repair or replacement costs exceed the original estimate and are not associated with the improved project."  *Id*. at ¶ 19.  Further, FEMA denied the City's claim for an additional $6,678,918.00 because the City did not identify an "error or omission in the original SOW [Statement of Work] or cost estimate that justifies amending the cap above the previously approved funding."  FEMA Second Appeal Decision at p. 5, attached as Exhibit B to First Amended Complaint.

masquerading as factual conclusions will not suffice to prevent a motion to dismiss." *Taylor v.*

*Books A Million*, Inc., 296 F.3d 376, 378 (5th Cir. 2002) (quotation marks omitted).

**A.     The City's First Amended Complaint Should be Dismissed for Lack of Subject Matter Jurisdiction**

1.      The United States has Sovereign Immunity from the City's Claims

It is well-settled that "the United States may not be sued without its consent and that the

existence of consent is a prerequisite for jurisdiction." *United States v. Mitchell*, 463 U.S. 206,

212 (1983) (citations omitted).  A suit against an executive department of the United States or

against departmental employees in their official capacities is a suit against the United States and

is, therefore, subject to the defense of sovereign immunity.  *Hawaii v. Gordon*, 373 U.S. 57, 58

(1963); *FDIC v. Meyer*, 510 U.S. 471, 475 (1994) (citations omitted).  Sovereign immunity

exists even when purely equitable relief is sought.  *Beale v. Blount*, 461 F.2d 1133, 1137 (5th

Cir. 1972); *Jaffee v. United States*, 592 F.2d 712, 717 n.10 (3d Cir. 1979) (citing *Malone v.*

*Bowdoin*, 369 U.S. 643, 648 (1962).  It also applies "to causes of action arising under acts of

Congress, and to those arising from some violation of rights conferred upon the citizen by the

Constitution."  *Lynch v. United States*, 292 U.S. 571, 582 (1934) (citations omitted); *accord*

*Bartlett v. Bowen*, 816 F.2d 695, 722 (D.C. Cir. 1987).

Sovereign immunity also bars actions for injunctive relief.  *See United Tribe of Shawnee*

*Indians v. United States*, 253 F.3d 543, 547 (10th Cir. 2001) ("[A]bsent express provision, a

court has no jurisdiction to either restrain the government from acting or compel it to act").

Absent a waiver of sovereign immunity, a district court lacks subject matter jurisdiction over

claims against the United States.  *Meyer*, 510 U.S. at 475 (citation omitted).  Where Congress

has waived the United States' sovereign immunity, the "waiver of the Federal Government's

sovereign immunity must be unequivocally expressed in [the] statutory text … and will not be

implied." *Lane v. Peña*, 518 U.S. 187, 192 (1996) (citations omitted).  And a waiver of sovereign immunity must "be strictly construed, in terms of its scope, in favor of the sovereign." *Id.*  A plaintiff bears the burden of establishing that a waiver of sovereign immunity encompasses its claims. *See Maynor v. United States*, No. 1559, 2005 WL 1902907, at *3 (D.D.C. July 11, 2005).

The City has sued FEMA and its administrator alleging that FEMA violated the Stafford Act (42 U.S.C. § 5205(c)) by denying the City's claim for $6,678,918.00 in additional PA grant funds.  The Stafford Act, however, does not waive sovereign immunity for this type of claim. *See Burgos-Montes v. Municipality of Yauco*, 294 F. Supp. 2d 141, 142 (D.P.R. 2003) (finding that the Stafford Act does not waive the United States' sovereign immunity); *accord California-Nevada Methodist Homes, Inc. v. FEMA*, 152 F. Supp. 2d 1202, 1203 (N.D. Cal. 2001) (sovereign immunity not waived regarding FEMA's allocation of earthquake-relief funds); *see also, Lawson v. FEMA*, No. 03-0881, 2003 WL 2006600, at *2 (S.D.N.Y. Apr. 30, 2003) (no jurisdiction to hear suit alleging FEMA denial of rental assistance when plaintiff failed to demonstrate a "specific statutory waiver of sovereign immunity").

The Stafford Act expressly precludes judicial review of the City's claim that FEMA improperly denied its claim demand for an additional $6,678,918.00.[17]  FEMA's eligibility determination on the City's request for additional funds is unequivocally a "discretionary duty or function" within the meaning of the Stafford Act.

The Act provides that the federal government "shall not be liable" for any claim based on a federal agency's or employee's "exercise or performance of or the failure to exercise or perform a discretionary function or duty."  42 U.S.C. § 5148.  "[T]his provision indicates that

---

[17] *See* First Amended Compl. at ¶ 29.

Congress sought to prohibit judicial review and . . . is most certainly clear and convincing evidence showing legislative intent to restrict access to judicial review." *Lockett v. FEMA*, 836 F. Supp. 847, 853 (S.D. Fla. 1993) (alteration in original) (citation omitted). Congress included this language to ensure that if "mistake[s]" were made in the administration of federal disaster relief, "the Government may not be sued . . . that there shall be no liability on the part of the Government." *See* 96 Cong. Rec. 11895, 11912 (1950) (statement by chairman of House Public Works Committee). "The use of the phrase 'liable for any claim' indicates not only Congress's concern that the government not have to pay damages, but also that it not be answerable in any way to claims arising out of discretionary actions." *Rosas v. Brock*, 826 F.2d 1004, 1008 (11th Cir. 1987). As explained by the United States Claims Court:

> This provision, on its face, clearly precludes federal governmental liability for its action or inaction in providing disaster relief . . . . Congress clearly manifested its intent to raise a statutory barrier to judicial review . . . . Additionally, the emergency assistance given under the Act constitute[s] a gratuity . . . . Liability should not be imposed on the federal government for discretionary acts or omissions of its agencies or employees in distributing benefits under such gratuitous programs.

*Ornellas v. United States*, 2 Cl. Ct. 378, 379-80 (1983) (citation omitted).

Thus, because the Stafford Act does not contain any express waiver of the United States' sovereign immunity, the City's claims under this Act should be dismissed for lack of subject matter jurisdiction.

    2.    <u>The APA Precludes Judicial Review of the City's Claims Against Defendants</u>

Although the City asserts jurisdiction in its First Amended Complaint under the Administrative Procedure Act ("APA") which allows for judicial review of final agency actions, such review is barred when the "(1) statute[ ] preclude[s] judicial review; or (2) [the] agency action is committed to agency discretion by law." 5 U.S.C. § 701(a). Both bars apply here: As

noted above, the Stafford Act expressly precludes judicial review of FEMA's discretionary actions. 42 U.S.C. § 5148. And, FEMA's actions were committed to its discretion by law.

In determining whether FEMA's eligibility determinations under 44 C.F.R. §§ 206.110-119 are discretionary functions shielded from judicial review by the Stafford Act, courts apply a two-part test set forth in *Berkovitz v. United States*, 486 U.S. 531, 536-37 (1988). The two-prong test was developed by the Supreme Court in applying the discretionary function exception of the Federal Tort Claims Act ("FTCA") to assess whether the Stafford Act provides immunity in a particular case and has been applied by courts in numerous cases challenging FEMA's determinations of eligibility for benefits:

> The first prong is satisfied when a choice or judgment is involved in the performance of the function, and that choice or judgment is not tempered by a statute, regulation or policy which mandates a particular course of action. If this condition is met, a court then proceeds to the second prong, which provides that the discretionary function exception will apply if the activity in question is grounded in social, economic or political activity.

*Sunrise Village Mobile Home Park, L.C. v. United States*, 42 Fed. Cl. 392, 399 (1998) (citing *Berkovitz,* 486 U.S. at 536-37); *accord In re FEMA Trailer Formaldehyde Products Liability Litigation*, 583 F. Supp. 2d 758, 768-69 (E.D. La. 2008) (applying *Berkovitz test); McWaters v. FEMA*, 408 F. Supp. 2d 221, 229 (E.D. La. 2006) (same); *City of San Bruno v. FEMA*, 181 F. Supp. 2d 1010, 1014-15 (N.D. Cal. 2001) (same); *Rebuild Northwest Florida, Inc. v. FEMA,* 2019 WL 4806344 *4 (N.D. Fl. 2019) (FEMA's deobligation determination was a discretionary function applying *Berkovitz test*); *People's Workshop, Inc. v. FEMA,* 2019 WL 1140196 **8-9 (M.D. La. 2019) (applying *Berkovitz test*); *Barbosa v. United States Department of Homeland Security,* 916 F.3d 1068, 1073 (D.C. Cir. 2019) (same).

Using this test, the court in *Sunrise Village* held that FEMA was not liable on plaintiffs' claim that a contractor had improperly performed removal of debris from plaintiffs' property.

The court observed that "no statute or regulation controls the government's monitoring of a contractor's work," such that "the extent of monitoring required or actually accomplished is necessarily a question of judgment or discretion." 42 Fed. Cl. at 399. The court also found it "unquestionable that disaster relief provided under the Stafford Act is grounded in social, economic and political policy." *Id.* (citation omitted).

Here, the City challenges FEMA's determination of its eligibility for $6,678,918.00 in additional PA grant funding to repair its water, sewer, and drainage systems. FEMA, entrusted by Congress to administer the federal disaster assistance program, reviewed the City's claim and determined that it was ineligible for additional PA grant funding because it was not supported by the documentation provided.[18] FEMA's eligibility decisions and actions clearly fall within its "discretionary functions" and are "based on considerations of public policy," namely, allocating the government's limited resources among victims of major disasters. These challenged agency actions were not mandatory because they involve a degree of "judgment or choice" and are the type of agency judgment that the Stafford Act was designed to insulate from judicial review. *See* 42 U.S.C. § 5148.

FEMA's mission is to distribute limited funds to victims of major disasters, and that distribution is "inherently a discretionary responsibility" and "[e]ligibility determinations … regarding the funding of eligible projects are steps in this discretionary process." *City of San Bruno v. FEMA,* 181 F. Supp. 2d at 1014; *see Graham v. Fed. Emergency Mgmt. Agency*, 149 F.3d 997 (9th Cir. 1998), *abrogated* on other grounds recognized by *Novak v. United States,* 795 F.3d 1012, 1019 (9th Cir. 2015). *Graham* held that under the Stafford Act, "decisions involving the allocation and deployment of limited government resources are the type of administrative

---

[18] *See* First Amended Complaint, ECF No. 12, at ¶ 19, and Exhibit B (FEMA Second Appeal Determination) to First Amended Complaint at p. 5.

judgment that the discretionary function exception was designed to immunize from suit." 149 F.3d at 1006. *See also, e.g., Lawson v. FEMA*, No. 03-0881, 2003 WL 2006600, at *2 (S.D.N.Y. Apr. 30, 2003) (no jurisdiction under Stafford Act or APA for claim that FEMA illegally denied plaintiff rental assistance); *United Power Ass'n v. FEMA,* No. A2-99-180, 2000 WL 33339635, at *3-4 (D.N.D. Sept. 13, 2000) (FEMA's determination that utility company was ineligible for disaster relief fell within the discretionary function exception); *City of San Bruno,* 181 F. Supp. 2d at 1014-15 (FEMA's determination that the city was not eligible for federal disaster following collapse of a hillside caused by rain was discretionary and unreviewable).

Accordingly, the eligibility determination at issue here is not subject to judicial review because it was discretionary, as it involved a degree of "judgment or choice," and because it is the type of agency judgment that Congress designed to insulate from judicial review.  *See* 42 U.S.C. § 5148.

Consequently, under both the Stafford Act and the APA, the City's claims should be dismissed.

**B.      The Court Should Dismiss the City's Bad Faith Breach of Contract Claim**

Count II of the City's complaint is based on the theory that the project worksheet for the management contract created for the grant award served as a contract between it and FEMA. Specifically, the City alleges that "FEMA breached its duty to execute its contract extension on timeline of performance with Biloxi" after FEMA agreed to extend "the timeline to complete the Biloxi infrastructure project through 2024."[19]  The Court should dismiss this breach of contract claim because the City has chosen the wrong court in which to pursue it and, even if the Court

---

[19] *Id.* at ¶ 33.

did hold jurisdiction, the City's assertion that the project worksheet is a contract fails as a matter of law.

1.    The Court Does Not Have Jurisdiction Over City's Contract Claim

The City cannot pursue its breach-of-contract theory in this Court because it lacks subject matter jurisdiction to adjudicate this claim.

Pursuant to the Tucker Act, a breach of contract case seeking in excess of $10,000 from the Federal government can only be maintained in the United States Court of Federal Claims. 28 U.S.C. §§ 1491(a) & 1346(a)(2). The Court of Federal Claims has exclusive jurisdiction over claims against government agencies if: 1) the action seeks monetary relief in excess of $10,000, and 2) the action is founded upon the Constitution, federal statute, executive regulation, or government contract. 28 U.S.C. § 1491(a), *see also, Humphries v. Various Fed. United States INS Employees*, 164 F.3d 936, 941 (5th Cir. 1999) (noting district court had no jurisdiction over $65,000 breach-of-contract claim against federal agency); *Law v. Aetna Life Ins. Co.*, 2011 WL 2840870, 5:09-CV-116-DCB-JMR, **4-5 (S.D. Miss. July 14, 2011) (dismissing breach of contract claim exceeding $10,000 against U.S. Navy "because it lies within the exclusive jurisdiction of the Court of Federal Claims"); *Grisanti v. United States*, No. 3:05CV12-D-A, 2006 WL 1233061 (N.D. Miss. May 3, 2006) (holding that plaintiffs should have brought claim alleging breach of repayment installment agreement for $11,966.93 in back taxes in the Court of Federal Claims under the Tucker Act). Indeed, "the law of this circuit is clear [that] the Court of Claims has exclusive jurisdiction of a Tucker Act claim in excess of $10,000." *Humphries*, 164 F.3d at 941 (quoting *Ware v. United States*, 626 F.2d 1278, 1287 (5th Cir. 1980)).

Courts have recognized the exclusivity of such contract claims asserted against FEMA in other instances. *See, e.g.*, *Burgos-Montes v. Municipality of Yauco*, 294 F. Supp. 2d 141, 143

(D.P.R. 2003) (noting lack of jurisdiction over third-party complaint against FEMA alleging breach of contract because under the Tucker Act, only the Court of Federal Claims had jurisdiction). Assuming, arguendo, that a project worksheet constituted a contract, the Tucker Act would apply and the Court of Federal Claims would have exclusive jurisdiction. Therefore, pursuant to FRCP 12(b)(1), this Court does not have subject matter jurisdiction over the City's contract claim.

2.    <u>There is No Contract Between Plaintiff and FEMA</u>

Even if this Court possessed jurisdiction over the City's contract claim, the claim should be dismissed under FRCP 12(b)(6) for failure to state a claim upon which relief can be granted. The City's contract claim cannot succeed here because the basis of the claim — a project worksheet — is without merit. A FEMA PA grant, or a Project Worksheet, are not a contract between FEMA and a disaster grant applicant, such as the City, to pay disaster assistance funds. *See Virgin Islands Water & Power Auth.*, 145 F.3d 635, 644 (3d Cir. 1998). A Project Worksheet merely identifies an eligible project's scope of work and estimates the eligible costs of that work. 44 C.F.R. § 206.202(d). Project Worksheets are prepared by FEMA or grant applicants, assisted in some cases by the relevant state government (in this case, the State of Mississippi). A state, as the recipient and administrator of PA grant funding from FEMA, approves subgrant awards based on approved Project Worksheets for each applicant. 44 C.F.R. § 206.202(a), (b) & (e). A Project Worksheet, therefore, is merely a mechanism to document an approved project's scope and funding under a federal grant program. 44 C.F.R. § 206.201(k). It is not a contract representing a promise to pay in exchange for some sort of consideration. This is clear from the Stafford Act itself. 42 U.S.C § 5172 ("The President <u>may</u> make contributions … to a State or local government for the repair, restoration, reconstruction, or replacement of a

public facility which is damaged or destroyed by a major disaster and for associated expenses incurred by such government.") (emphasis added).

The Court of Federal Claims recently analyzed whether FEMA disaster assistance, and in particular, Project Worksheets constitute a contract.  In *Columbus Regional Hospital v, United States*, the Court of Federal Claims held that a FEMA subgrantee could not demonstrate that it had a contract (express contract, implied-in-fact contract or even third-party beneficiary status) with FEMA arising out of a disaster assistance grant.  *Columbus Regional Hospital v, United States*, 2019 WL 5076955, **4-8 (Fed. Cl. Oct. 10, 2019).  Further, the Court opined that a Project Worksheet did not constitute an express contract between a FEMA subgrantee and FEMA.  *Id*. at *4.  Rather, Project Worksheets reflect the State's or Grantee's obligations under the FEMA-State agreement.  *Id*.[20]

Because the City's contention that its Project Worksheet is a contract between it and FEMA is without merit, it cannot prevail on its breach of contract claim.  Therefore, the Court should dismiss the City's contract claim pursuant to FRCP 12(b)(6).

## III.    CONCLUSION

The City's First Amended Complaint should be dismissed because the United States has not waived sovereign immunity, the Court does not have subject matter jurisdiction over the claims, and, in any event, there is no contract between the City and FEMA.

Respectfully submitted,

D. MICHAEL HURST, JR.
United States Attorney
Southern District of Mississippi

---

[20] At the time of this filing, *Columbus Regional Hospital* is on appeal to the Federal Circuit Court of Appeals.

By: _/s/ Gregg Mayer_____
JENNIFER CASE (MS Bar #104238)
GREGG MAYER (MS Bar #102232)
Assistant United States Attorneys
Southern District of Mississippi
501 E. Court Street
Suite 4.480
Jackson, Mississippi 89201
(601) 965-4480
Jennifer.L.Case@usdoj.gov
Gregg.Mayer@usa.doj.gov

## **CERTIFICATE OF SERVICE**

I, Gregg Mayer, Assistant U.S. Attorney, hereby certify that, on this day, I

electronically filed the foregoing with the Clerk of Court using the CM/ECF system,

which served to send notification of this filing to the appropriate counsel in this case.

Date:  April 6, 2020                    */s/ Gregg Mayer*
                                         Assistant United States Attorney